### SPILLER v. McGEHEE et al.
#### No. 2511.

Court of Civil Appeals of Texas. Beaumont.
March 2, 1934.

Rehearing Denied March 7, 1934.

Hill, Hill, Randolph & Hughes, of Houston, for plaintiff in error.

Gordon O. McGehee, of Houston, and Crawford & Crawford, of Conroe, for defendants in error.

O'QUINN, Justice.

Plaintiff in error was plaintiff below, and defendants in error were defendants. We shall refer to them as plaintiff and defendants.

Plaintiff brought this suit in the district court of Montgomery county, against Gordon O. McGehee, John White, Josie Thompson, J. C. Thompson, Iva Perkins, Montie Perkins, Clara Perkins, Jack Perkins, Wallace Perkins, Lula May Perkins, and William A. Jones, defendants, in the nature of an action in trespass to try title to recover land, and to cancel a deed to certain mineral products to be produced from the lands described in plaintiff's petition, and to remove cloud from title.

Defendants answered by general demurrer, numerous special exceptions, the two and four-year statutes of limitation, general denial, and a plea of not guilty.

The court sustained the general demurrer, and, plaintiff declining to amend, rendered judgment accordingly, and that defendants go

hence without day and recover their costs. Plaintiff brings this appeal.

 Defendants' motion to dismiss the appeal is overruled. It is based upon the contention that the judgment from which the appeal was taken was not a final judgment and therefore not appealable. The judgment recites that "the court is of the opinion that the law is against the plaintiff on his right to recover in this suit and is with the defendants herein, and the plaintiff having failed to amend it is therefore *ordered, adjudged and decreed* by the court that the general demurrer urged by the defendants against plaintiff's first amended original petition be in all things sustained and that defendants go hence without day and that plaintiff pay all costs of this suit, for which let execution issue."

That sustaining a general demurrer against a plaintiff's petition, and discharging the defendant with his costs from the case, is a final judgment, is too well settled for cavil. But defendants insist that the instant judgment is not final because it does not, after sustaining the general demurrer, go further and decree a dismissal of plaintiff's suit. The contention is without merit. The form of a judgment is not material, its effect is what controls. If it shows a final disposition of the case, that is sufficient. We think there can be no question but that the instant judgment does this. It recites that the court found that the law was against the plaintiff's right to recover upon the facts by him pleaded, and decreed that the general demurrer to plaintiff's petition be sustained and that *"defendants go hence without day,"* and that plaintiff pay all costs for which execution might issue. This was not only a finding against plaintiff's right to recover, but specifically discharged defendants from further answering, with their costs. This terminated plaintiff's right to there further litigate the matter in contest in this suit, for there must be at least two parties, a plaintiff and a defendant, to a suit, and the discharge of defendants *without day* left the court without jurisdiction over them as to any further proceeding in the case.

In Bradshaw v. Davis, 8 Tex. 344, Chief Justice Hemphill says:

"The judgment upon the verdict should have been that the original petition be dismissed; *or* that the plaintiff take nothing by his suit; *or, that the defendants go hence, and be discharged without day*, etc., or expressions of equivalent import should have been used, showing that the subject-matter of the controversy had been determined, and that in favor of the defendant." (Italics ours.)

In Hamman v. Lewis, 34 Tex. 474, 478, Judge Walker said:

"A judgment from which an appeal can be taken must show some final disposition of the case. It may be that the plaintiff take nothing by his suit, *or that the defendant go hence without day and recover his costs*." (Italics ours.)

In Boren v. Jack (Tex. Civ. App.) 73 S. W. 1061, it is said, quoting from the syllabus:

"An order sustaining a demurrer, which does not show that the petition was dismissed upon the demurrer being sustained, and does not recite that the plaintiffs take nothing by their suit, *or that the defendant 'go hence without day,' and recover his costs*, is not final, and hence not appealable." (Italics ours.)

It is to be observed that in the cases cited the matters stated in a judgment necessary to constitute a final judgment are not connected with the conjunctive *"and,"* but by the disjunctive *"or."* So it is clear that the recital in the judgment of either of them is sufficient and makes the judgment final.

In Freeman on Judgments (5th Ed.), vol. 1, § 22, at page 37, it is said:

"A judgment that the defendant go hence and recover his costs, etc., though not very formal, is a good final judgment, because no further action can be taken while it is in force."

We do not deem it necessary to cite other authorities supporting our holding. It is well settled that if the judgment, after sustaining a general demurrer, decreed a dismissal of the suit, or that plaintiff take nothing, or that defendant go hence without day with his costs, the judgment is final and appealable.

 The instrument under which defendants claim, and which is sought by plaintiff to cancel, reads:

"The State of Texas County of Montgomery
"Know all men by these presents:
"That I, W. F. Spiller, of the County of Montgomery, State of Texas, for and in consideration of the sum of One ($1.00) Dollar to me paid by W. P. Perkins as well as other good and valuable considerations to me in hand paid, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said W. P. Perkins, of the County of Montgomery, State of Texas, all that certain undivided one-half of all the gold,

silver and all other valuable mineral products, produced from those certain tracts of land, all lying, being situated within Montgomery County, Texas, about 5 miles west of the town of Willis, to-wit: (then follows the description of four tracts of land totaling 1041 acres).

"Together with the right of ingress and egress to go upon said tracts of land, and mine and market said mineral products, and for this purpose to erect and maintain thereon all necessary machinery for said· purpose but said mining operations shall not be so conducted so as to interfere with the free use of all buildings thereon. Work to begin in 12 months.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said W. P. Perkins, his heirs or assigns, forever; and I do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend, all and singular, the said premises unto the said W. P. Perkins, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. Said mineral rights as above set out.

"Witness my hand at Esperanza, Texas, this the 8th day of May, A. D. 1913.
"[Signed] W. F. Spiller."

The deed was duly acknowledged and placed of record.

Plaintiff contends (a) that the deed did not convey title to the minerals in place, but merely the right to acquire title by mining operations to produce the minerals named; (b) that the deed conveyed the mineral products to be produced from the land upon condition precedent, which was that the minerals were to be produced from the lands by mining operations before title to any portion of the minerals passed to the grantee, and then only to an undivided one-half of those produced; (c) that in order to acquire any portion of the minerals mentioned, work in the mining of said mineral products must have begun within twelve months from the date of the instrument—May 8, 1913; and (d) that as such work did not begin within twelve months, and in fact no such work was ever begun or attempted, the right to thus acquire title to any of the mineral products was lost, and the conveyance failed.

Defendants deny this contention, and assert that the deed conveyed a fee-simple title to an undivided one-half of the minerals mentioned, including oil and gas, without condition of any character—that is that the deed conveyed in præsenti an undivided one-half of the minerals in fee-simple title in place, absolutely, and without condition and without any obligation on the part of the grantee to do anything in the way of mining operations to produce the minerals or remove them, if existent, from the lands. They insist that the expression in the conveying clause, "work to begin in 12 months," is without effect, meaningless, and should not be considered in construing the instrument.

■■ In construing a deed, the fundamental rule is to ascertain the intent of the parties, and this must be gathered from the whole instrument. Defendants' contention that the words "work to begin within 12 months" is meaningless, of no effect, and should not be considered, is not sound. All its parts must be considered, and, unless conflicting, given effect. When this is done in construing the deed in question, we think it clear that plaintiff's contention that the deed conveyed the interest named upon condition precedent must be sustained. The deed conveyed "all that certain undivided half of all the gold, silver and all other valuable *mineral products produced* from those certain tracts of land." The word "products" means things produced, and the word "produced" means "to bring forth," "to bring into being or form," "to cause to be or to happen," "to make," etc. 50 C. J. 629. It is obvious that the parties to the above deed did not·have in mind a conveyance of minerals in place, but that they contemplated the granting to the grantee of the right to acquire title to the minerals mentioned as and when the grantee by mining operations produced said minerals from the lands described. This, we think, unquestionably and specifically is provided in the deed. It grants to the grantee the right of ingress and egress upon the lands to "mine and market said mineral products." What mineral products? Those produced from the lands. Produced by whom? Certainly by the grantee or his assigns, for there is nothing in the deed to indicate that any other person was to engage in the mining operations necessary to produce the minerals, but to the contrary, the deed in plain terms provides for the right in the grantee of ingress and egress upon the lands, and the erection thereon of machinery necessary for the purpose of mining said minerals, thus plainly showing the purpose of the grant.

Furthermore, the habendum clause of the deed authorizes the grantee to have and to

hold the things conveyed, as *"said mineral rights as above set out,"* referring to the mineral products produced from the lands mentioned in the granting clause, not to have and to hold the *minerals* in the lands, but to have and to hold the undivided one-half of the *mineral products produced from the lands*—the mineral *rights*, or rather the *right to acquire* an interest in the mineral products produced from the lands by grantee.

Moreover, if the deed was intended to convey one-half of the minerals in fee-simple title in place, why insert in the deed the clauses as to the right of the grantee to enter upon the land and to mine for same, and to provide for the mining work to begin within twelve months from the date of the deed. Also, why describe the things conveyed as "mineral products produced from the lands"? Evidently the grantor had a reason for the insertion of said clauses and provisions, and they being proper and not antagonistic to the granting and holding parts, must be given their effect in construing the deed as a whole. If defendants' insistence that the deed conveyed in præsenti an absolute fee-simple title to the minerals, then the insertion of the provisions discussed was useless. It would be against all rules for the construction of deeds to delete these provisions from the instrument, and give it an interpretation foreign to the clear intent of the grantor.

But defendants insist that the expression "work to begin within 12 months" must be rejected because it is a condition or stipulation inconsistent with and destructive of the granting clause, and hence cannot be considered in the construction of the deed. This contention is not well taken. This provision or term of the deed is not in any wise inconsistent with or contrary to the granting or habendum clauses of the deed, but, when the instrument is considered as a whole, is entirely in agreement with and a necessary part of the deed to express the purpose and intent of the grantor in the execution of the deed. The purpose of the conveyance being the development of the lands for the minerals mentioned, it was not only proper but necessary for some stipulation to be made as to when such operations for development should be begun and conducted.

Plaintiff's contention that as the right of the grantee or his assigns in the deed in question to acquire title to an interest in the minerals in the lands, if any, depended upon his beginning mining work in the production of said minerals within twelve months from the date of the deed, May 8, 1913, and that as such work was not begun within said time, nor at any time, the right had lapsed and the conveyance had failed, should be sustained. It must not be overlooked that under the plain terms of the deed the grantee was to have only one-half of the mineral products produced from the lands, the grantor being the owner of the other one-half. So it clearly appears that development of the land for said mineral products was the main consideration for and the full purpose of the deed. Hence the express stipulation in the deed that work in the development must begin within the named period of time, and such work never having been begun, the right to mine for the minerals was lost.

As what we have said disposes of the contentions of the parties decisive of the case, we pretermit a discussion of the other questions presented. The judgment is reversed and the cause remanded for another trial in accordance with our holdings herein.

Reversed and remanded.